STATE *v.* DINSHAH P. GHADIALI.

(MARCH 16, 1933.)

HARRINGTON, J., sitting.

*Daniel J. Layton,* Attorney-General, and *P. Warren Green,* Deputy Attorney-General, for the State.

The defendant was not represented by counsel and conducted his own defense.

Court of General Sessions for New Castle County, No. 31, March Term, 1933.

HARRINGTON, J., charging the jury:

Notwithstanding the time that it has taken to try this case, the issues involved are comparatively simple. The defendant has been indicted for practicing medicine in this State without a license, and he is being tried on that charge.

The material allegations of the indictment are:

1. That Dinshah P. Ghadiali, late of Wilmington Hundred, and so forth, on certain dates, did then and there, of his own proper authority, unlawfully engage in the practice of medicine without having obtained a proper license therefor from the Clerk of the Peace of New Castle County, according to law, in that he, the said Dinshah P. Ghadiali, then and there, and without having obtained a license as aforesaid, did recommend the use of an appliance for the cure, relief, or palliation of ailment or disease of mind or body with the intention of receiving therefor, either directly or indirectly, money or some other form of compensation, in violation of the laws of the State of Delaware.

2. That Dinshah P. Ghadiali, late of Wilmington Hundred, in the county aforesaid, on the first day of January, nineteen thirty-two, and so forth did then and there, of his own proper authority, unlawfully engage in the practice of medicine without having obtained a proper license therefor from the Clerk of the Peace of New Castle County, according to law, in that he, the said Dinshah P. Ghadiali, then and there, and without having obtained a license as aforesaid, did use in connection with his name the letters "M. D." implying or designating him as a practitioner of medicine, in violation of the laws of the State of Delaware.

*Section* 849 of the *Code of Nineteen Fifteen* on which the indictment is based provides, among other things, that for the purpose of this chapter, the words "Practice of Medicine or Surgery" shall mean to suggest, recommend, prescribe or direct for the use of "any person, any drug,

medicine, appliance or other agency, whether material or not material, for the cure, relief or palliation of any ailment or disease of the mind or body, * * * after having received or with intent of receiving therefor, either directly or indirectly, any money, gift, or other form of compensation."

The same section of the statute further provides: "It shall also be regarded as practicing medicine within the meaning of this chapter if anyone shall use in connection with his or her name, the words or letters Dr., Doctor, Professor, M. D., M. B., or Healer, or any other title, word, letter or other designation which may imply or designate him or her as a practitioner of medicine, or surgery, in any of its branches."

This clause is followed by a *proviso* to the effect that nothing in this chapter shall be construed to apply to the administration of domestic or family remedies in cases of emergency, or to dentists, or to prevent the mechanical application of glasses, and so forth, and, also, including in such *proviso* druggists practicing pharmacy, according to existing laws, and persons treating corns, bunions and doing manicuring or practicing massage.

The statute in question is, therefore, extremely broad and comprehensive in its terms; but, being a legislative enactment, we are all governed by its provisions regardless of our own ideas of what may constitute practicing medicine, independent of its provisions.

The defendant admits that he had no medical license in this State, but denies that what he did required it; and in order to find him guilty, the State must prove the allegations of the indictment. That is, it must prove to your satisfaction:

1. That the defendant in this State and county recommended for the use of some person or persons, an appliance, by whatever name it may be called, for the cure, relief

or palliation of some ailment of the body, and that such advice was given with the intention of receiving, either directly or indirectly, therefor, money or some other form of compensation, or, it must prove,

2. That the defendant used in connection with his name the letters M. D. in such a manner as to imply or to designate him as a practitioner of medicine in the State.

These are the material questions, and the only material questions for you to determine; and this is true no matter who may have instigated the prosecution of the defendant by the State and no matter whether the New Jersey corporation of which the defendant is president and which manufactures the electrical appliance in question, has the right to do business in this State, by reason of the Interstate Commerce clause of the Federal Constitution or otherwise. In other words, the question for you to consider is whether the defendant violated the statute above referred to.

This is a question of fact for you to determine, but, if you believe that the defendant for the purpose and with the intention of receiving, either directly or indirectly, money or other compensation for his advice, recommended the use of the electrical appliance in question, to any of the persons present at the duPont Hotel meetings for the cure or relief of tuberculosis, or any other bodily disease, it would constitute a violation of that clause of the statute referred to in the second count of the indictment; and this would be true though no particular person was singled out and given that recommendation or advice.

Whether, however, such advice or recommendation was given, and if so whether it was given with the intent of receiving some direct or indirect compensation therefor, is for you to determine from the evidence before you.

But, as I have already indicated, proof of both the

recommendation of the use of the appliance for the relief or cure of a bodily ailment and the intention of receiving some compensation for such advice, either directly or indirectly, are essential to proof of the State's case on the second count of the indictment.

As, in most criminal cases, the question as to whether defendant had any such intent must necessarily depend on the facts and circumstances proved, and is for you to determine from the evidence before you.

As, in all criminal cases, where evidence as to an essential element of a case is circumstantial, you must be satisfied, not only that the circumstances are consistent with guilt, but you must also be satisfied that they are inconsistent with any other rational conclusion.

If, however, the evidence establishes the particular detail or element in question to your satisfaction, you should act accordingly.

In this connection, you should also bear in mind, however, that it is not necessary for the State to show that any such purpose or intent was actually realized, or carried out by the defendant, and that he did actually receive some direct or indirect compensation for such recommendation and advice, if any such advice was given.

(The court here charged on reasonable doubt.)

Bearing in mind that you are the sole judges as to the effect of the evidence, whether your verdict shall be "guilty" or "not guilty" is for you to determine from the evidence produced and admitted before you.

But, if you believe that the defendant did violate *Section* 849 of the *Code* in that he did in this county and State recommend to any person the use of an appliance for the relief or cure of some bodily ailment with the intent of receiving some compensation therefor, either directly or indirectly, or, if you also believe that he used the letters

M. D. in connection with his name in such a manner as to imply or designate him as a practitioner of medicine, in this State, your verdict should be "guilty."

If, on the other hand, you do not believe that he recommended to any person the use of an appliance for the cure or relief of some bodily ailment; or, if he did, that he did not make such recommendation with the intent of receiving any direct or indirect compensation therefor; and if you further believe that he did not use the letters M. D. in connection with his name in this State, or, if he did, that he did not use such letters in such a manner as to imply or designate him as a practitioner of medicine in this State, your verdict should be "not guilty."

The jury found the defendant guilty, and on a subsequent date he was sentenced by the court to pay a fine of Two Hundred and Fifty ($250.00) Dollars and costs. He then appealed from that judgment to the State Supreme Court, and, among others, filed in that court the following assignments of error:

3. That the evidence was insufficient to justify a verdict of guilty on count 2.

16. That there is absolutely no evidence on the record connecting the defendant, directly or indirectly, with the recommendation and intent of compensation for such recommendation.

22. That the court erred in debarring introduction of evidence showing the scientific background of the defendant and his work.

23. That the court erred in refusing to take judicial notice of the Delaware State Charter of Spectro-Chrome Institute.

24. That the court erred in refusing to take judicial notice of the United States of America letters patent No.

1544973 pertaining to certain color wave projection apparatus called Spectro-Chrome.

27. That there was nothing in the evidence to indicate that the defendant used the letters, M. D., to imply or designate that he was a practitioner of medicine in the State of Delaware.

29. That the court erred in not instructing the jury about considering the preamble of the Medical Practice Law of Delaware.

31. That the court erred in not instructing the jury on the value of honorary degrees and their difference from ordinary degrees.

38. That the court erred by frequently advising the defendant to get a lawyer.

40. That the time of 15 minutes allowed the defendant to summarize a case on decision of which his life's work and reputation rested, was too short for justice.

The State Supreme Court affirmed the judgment of the court below.

---

NOTE.—The defendant subsequently sued out a Writ of *Certiorari* to the Supreme Court of the United States, which writ was, on June 4, 1934, dismissed.